# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE


**Zebadiah Kellogg-Roe**

    v.                          Case No. 15-cv-116-PB
                                    Opinion No. 2020 DNH 049

**Warden, NH State Prison**


## MEMORANDUM AND ORDER

Zebadiah Kellogg-Roe was convicted in 2008 of four counts of aggravated felonious sexual assault and sentenced to an aggregate term of twenty to forty years in state prison. He has petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, on the ground that his Sixth Amendment rights were violated. His jailer, the Warden of the New Hampshire State Prison, moves for summary judgment. For the following reasons, I grant the Warden's motion.

## I.   BACKGROUND[1]

### A.   Trial Proceedings

Kellogg-Roe was charged in the Hillsborough County Superior Court with aggravated felonious sexual assault for engaging in sexual intercourse with a child under the age of thirteen. He

---

[1] The facts have been gleaned from the record before, and the decisions of, the state courts involved in Kellogg-Roe's trial, post-conviction litigation, and appeals. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

pleaded not guilty to the charges, and two public defenders were appointed to represent him. Prior to trial, he requested that his counsel "stand down and present no defense." Doc. No. 120-5, Ex. 4-C at 5 (filed conventionally). Defense counsel promptly sought a ruling from the trial court on this so-called "silent defense." Although Kellogg-Roe refused at the hearing to answer questions about the role he envisaged for his counsel, it became apparent that he wished counsel to do "absolutely nothing" to oppose the prosecution's case. See id. at 5-6.

The trial court denied his request. The court informed Kellogg-Roe that he could dispense with counsel and represent himself if he wanted to control trial strategy. But if he chose to be represented by counsel, Kellogg-Roe had no right to insist that counsel abide by his preferred "silent defense" and abdicate their ethical obligation to zealously defend him, the court explained. Kellogg-Roe's wishes notwithstanding, defense counsel could "make an opening statement, cross[-]examine witnesses, make closing statements, and do things of that nature in this case that they thought are necessary." Id. at 4. So informed, Kellogg-Roe still opted to be represented by counsel.

At trial, the prosecution presented evidence that Kellogg-Roe had admitted on multiple occasions (including to one of his neighbors, his acupuncturist, and the police) that he had engaged in sexual intercourse with a twelve-year-old girl. He

has never challenged the admissibility of those admissions.  The victim also testified that Kellogg-Roe had had sexual intercourse with her many times during a four-month period in 2001, when she had lived with him.  The victim's mother testified that she had grown suspicious of Kellogg-Roe after finding the victim in Kellogg-Roe's bed clad only in a towel, and that soon after the victim had told her that Kellogg-Roe had had sex with the victim.

Defense counsel contested Kellogg-Roe's guilt.  They made an opening statement, a closing argument, cross-examined six of the twelve prosecution witnesses, and called three defense witnesses.  The defense's theory was that Kellogg-Roe had falsely confessed to the crime, owing to his philosophy of non-resistance in the face of adversity, summarized by the phrase "suffer and permit."  The victim, the defense suggested, had been raped by another man and had asked Kellogg-Roe to confess instead.

After the victim testified, Kellogg-Roe's counsel stood up to cross-examine her, but Kellogg-Roe rose too and asked counsel not to proceed.  After excusing the jury, the trial court engaged in a colloquy with Kellogg-Roe.  The court advised him that cross-examining the victim might be "helpful" and that foregoing it might have a "deleterious" or "adverse impact" on his defense.  See Trial Tr. 185-91 (filed conventionally).

3

Kellogg-Roe responded that he understood the repercussions and expected he would be found guilty, but he wanted to spare the victim from "uncomfortable" questioning and be "respectful of [her] right to privacy." Id. at 187-88. The trial court decided to "honor" Kellogg-Roe's decision. Id. at 191. His counsel followed his instruction and did not cross-examine the victim, explaining to the jury that this was done at Kellogg-Roe's request.

The jury found Kellogg-Roe guilty on all four counts of aggravated felonious sexual assault. On April 1, 2010, he was sentenced to twenty to forty years in state prison.

## B.    Post-Conviction Proceedings

Kellogg-Roe appealed his conviction to the New Hampshire Supreme Court ("NHSC"), advancing two claims. First, he argued that the trial court erroneously deprived him of his right under the Sixth Amendment and state law to insist on a silent defense. In the alternative, he contended that the court erred in ceding control to Kellogg-Roe over the decision whether to cross-examine the victim. The NHSC affirmed his conviction in an unpublished order in August 2013. See Doc. No. 9.

On the first claim, the NHSC stated that Kellogg-Roe had "incorrectly assumed" the existence of a general rule that "a represented defendant has the constitutional right to control 'the fundamental plan of defense.'" Id. at 2. Because he then,

4

"quite understandably," did not advance an argument why the NHSC should adopt that rule, the court "decline[d] to hypothesize whether an exception to a rule that we have not yet adopted would exist should a defendant seek a silent defense." Id. The NHSC also declined to decide the second claim because the argument was "insufficiently developed." Id.

In November 2013, Kellogg-Roe filed a motion for a new trial in the Hillsborough County Superior Court based on ineffective assistance of counsel. He alleged that his trial counsel had failed to convey to him a plea offer of a five-year sentence. The post-conviction court denied the motion in March 2015, following an evidentiary hearing where Kellogg-Roe, both his trial attorneys, and the prosecutor in the underlying case testified. The court found that his counsel had communicated the plea offer to Kellogg-Roe, which he "understood and chose not to accept." Doc. No. 1 at 22. The NHSC declined discretionary review in October of that year.

In the interim, Kellogg-Roe filed a federal habeas petition in April 2015, appearing pro se. This court granted a stay to allow him to exhaust his state court remedies as to the claims in his petition and later appointed counsel to represent him.

Represented by the same post-conviction counsel, Kellogg-Roe filed a state habeas petition in the Merrimack County

Superior Court in May 2018, asserting five of the six claims he advances in his federal habeas petition:

(1) Denial of right to the assistance of counsel by depriving [Kellogg-Roe] of the right to present his defense of choice.

(2) Denial of right to the assistance of counsel by depriving [Kellogg-Roe] of the right to cross-examination by counsel of the key prosecution witness.

(3) Denial of the right to cross-examination.

(4) Denial of the right to effective assistance of counsel at trial.

(5) Denial of the right to effective assistance of appellate counsel.

Doc. No. 120-6 at 5-6. In January 2019, the post-conviction court denied Kellogg-Roe's petition on cross-motions for summary judgment.

At the outset, the post-conviction court determined that all five claims were subject to the standard for ineffective assistance of counsel articulated in Strickland v. Washington, 466 U.S. 668 (1984), which requires deficient performance by counsel resulting in prejudice. The court construed the claims as asserting either deprivation of counsel or ineffective assistance of counsel but found the distinction irrelevant because "the standard for ineffective counsel and for being deprived of any counsel at all are . . . one in the same." Doc. No. 120-6 at 7. The court then determined that all claims failed both prongs of the Strickland test.

The first claim, based on the denial of Kellogg-Roe's request for a "silent defense," failed the deficiency prong because counsel had the ethical obligation to zealously represent him, and the trial court had properly instructed counsel to fulfill that function. See Doc. No. 120-6 at 7-9. The second claim failed because allowing counsel to follow their client's directive not to cross-examine the victim was objectively reasonable where Kellogg-Roe was fully informed of the folly of his decision. See id. at 9-10. The court rejected the third claim on the ground that Kellogg-Roe had made a knowing, intelligent, and voluntary waiver of his right to cross-examine the victim. See id. at 10-11. The fourth claim, premised on ineffective assistance of counsel for neither refraining from defending him altogether nor cross-examining the victim, was deemed "merely a rehashing of prior arguments, and without merit." Id. at 11. The fifth claim failed because appellate counsel's performance was not deficient where "the law was clearly against" Kellogg-Roe and counsel neither "neglected to raise an argument [n]or did so frivolously [n]or poorly." Id. at 12. Finally, the court held that even if Kellogg-Roe had proved deficient performance as to any of his claims, he could not establish prejudice considering the "overwhelming evidence against him," including "his many admissions." Id. at 12. The

post-conviction court thus denied the state habeas petition.
The NHSC declined to take discretionary appeal in March 2019.

This court thereafter lifted the stay and Kellogg-Roe filed
an amended federal habeas petition, which is the operative
pleading in this matter.  See Doc. No. 118.  In addition to the
five claims raised in Kellogg-Roe's state habeas petition, his
amended federal habeas petition asserts ineffective assistance
of counsel during plea negotiations - a claim he had exhausted
in state court prior to filing his state habeas petition.  The
Warden now moves for summary judgment, and Kellogg-Roe objects.

## II.  STANDARDS OF REVIEW

### A.  Standard for Reviewing State Court Decisions

A federal court may grant habeas corpus relief "only on the
ground that [a person] is in custody in violation of the
Constitution or laws or treaties of the United States."  28
U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death
Penalty Act of 1996 ("AEDPA"), if a state court has adjudicated
a petitioner's claims on the merits, habeas relief is warranted
only if the adjudication (1) "was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States," id.
§ 2254(d)(1), or (2) "was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).

A state court adjudication is contrary to clearly established federal law if the court "applies a rule that contradicts the governing law set forth by the Supreme Court or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent." Chum v. Coyne-Fague, 948 F.3d 438, 443 (1st Cir. 2020) (internal quotation marks and brackets omitted). A state court's decision unreasonably applies clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case." Abrante v. St. Amand, 595 F.3d 11, 15 (1st Cir. 2010) (internal quotation marks omitted). To be unreasonable, a state court's application of existing legal principles must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (per curiam) (internal quotation marks omitted).

The mode of analysis under 28 U.S.C. § 2254(d) depends on whether a state court's decision is accompanied by reasoning. See Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). If no

reasoning accompanies the decision, the federal habeas court must "determine what arguments or theories . . . could have supported, the state court's decision." Harrington v. Richter, 562 U.S. 86, 102 (2011). But if there is a reasoned decision, either from the last state court to decide a prisoner's federal claim or a lower state court, the "federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." Wilson, 138 S. Ct. at 1192. In other words, § 2254(d) "requires the federal habeas court to train its attention on the particular reasons — both legal and factual — why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision." Id. at 1191-92 (internal quotation marks and citations omitted).

B.  **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, a "material fact" is one that has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (internal quotation marks omitted). A "genuine dispute" exists if a jury could resolve the disputed fact in the nonmovant's favor. Ellis v. Fidelity Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

With one exception not pertinent to my decision, the parties agree that no material facts are in dispute and that I may resolve the Warden's motion on the record submitted.[2]

### III. <u>ANALYSIS</u>

Kellogg-Roe asserts six claims for relief, all premised on alleged violations of his Sixth Amendment rights. Three of his claims stem from the state trial court's allocation of control over the defense as between Kellogg-Roe and his counsel. The other claims allege a violation of his right to cross-examine a witness, ineffective assistance of counsel in plea negotiations, and ineffective assistance of appellate counsel. I address the claims in turn and conclude that none warrants habeas relief.

**A.** <u>**Control over the Defense (Claims 1, 2, and 4)**</u>[3]

Kellogg-Roe pleaded not guilty and chose to be represented by counsel at trial but wanted his counsel to do nothing in terms of putting on a defense or opposing the prosecution's case. Simply put, he wanted to silence his counsel. The state trial court denied his request, empowering defense counsel to function as counsel and make judgments about trial strategy.

---

[2] The exception involves the question as to whether one of the claims is time barred. Because I reject that claim on the merits, I need not decide the statute of limitations question.

[3] The claims are numbered based on their sequence in Kellogg-Roe's amended federal habeas petition. <u>See</u> Doc. No. 118.

When defense counsel sought to cross-examine the victim, however, the trial court honored Kellogg-Roe's request to forego cross-examination.  Kellogg-Roe argues that his Sixth Amendment rights were violated because he was not permitted to control the objectives of his defense in the first instance, or, alternatively, because his defense counsel was subsequently compelled to obey one of his specific strategic demands.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  The Supreme Court has recognized various categories of claims subsumed within the right to the assistance of counsel, including (1) ineffective assistance of counsel ("ineffectiveness claims"), see Strickland, 466 U.S. at 688; (2) complete deprivation of the assistance of counsel ("deprivation claims"), see United States v. Cronic, 466 U.S. 648, 659 (1984); and (3) violation of a defendant's autonomy to decide the objectives of his defense ("autonomy claims"), see McCoy v. Louisiana, 138 S. Ct. 1500, 1508 (2008).  A key difference among these categories is whether a showing of prejudice is an essential component of the claim.

Ineffectiveness claims, which encompass most right-to-counsel claims, are governed by the familiar Strickland standard.  A defendant must prove deficient performance by counsel that resulted in prejudice.  Strickland, 466 U.S. at

687.  Counsel's performance was deficient if it fell below an
objective standard of reasonableness under the circumstances.
Id. at 687–88.  "Judicial scrutiny of counsel's performance must
be highly deferential."  Id. at 689.  "[A] reviewing court must
not lean too heavily on hindsight: a lawyer's acts and omissions
must be judged on the basis of what he knew, or should have
known, at the time his tactical choices were made and
implemented."  Ouber v. Guarino, 293 F.3d 19, 25 (1st Cir.
2002).  "To establish prejudice, the defendant must show that,
but for counsel's unprofessional error, there is a reasonable
probability that the result of the proceeding would have been
different."  Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir.
2007).  Stated differently, prejudice requires "a reasonable
probability that, absent the errors, the factfinder would have
had a reasonable doubt respecting guilt."  Strickland, 466 U.S.
at 695.

      By contrast, deprivation claims are reserved for a narrow
set of errors that result in actual or constructive denial of
the assistance of counsel altogether during a critical stage of
the proceedings.[4]  See Strickland, 466 U.S. at 692; Cronic, 466

_____

[4] "[A] critical stage . . . denote[s] a step of a criminal
proceeding, such as arraignment, that held significant
consequences for the accused."  Bell v. Cone, 535 U.S. 685, 695–
96 (2002) (internal quotation marks and citations omitted).

U.S. at 659.  The Supreme Court has identified three specific circumstances where such a deprivation occurs: (1) when there is "complete denial of counsel," meaning that "counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding," Cronic, 466 U.S. at 659 & n.25; (2) when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," id. at 659; and (3) when "counsel is called upon to render assistance under circumstances where competent counsel very likely could not," Bell, 535 U.S. at 696 (citing Cronic, 466 U.S. at 659-62). Prejudice is presumed in these circumstances because they are tantamount to having no counsel at all and thus are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." Cronic, 466 U.S. 658.  Therefore, actual or constructive denial of counsel is a structural error that entitles a defendant to "automatic reversal" regardless of the error's actual "effect on the outcome."  See Neder v. United States, 527 U.S. 1, 7 (1999).

Autonomy claims, meanwhile, are premised on violations of a defendant's "right to make the fundamental choices about his own defense." McCoy, 138 S. Ct. at 1511.  The "right to defend" granted to the defendant "personally" in the Sixth Amendment protects not only his right to self-representation, see Faretta v. California, 422 U.S. 806, 834 (1975), but also ensures that

if the defendant chooses to be represented by counsel he retains the "[a]utonomy to decide . . . the objective of the defense." McCoy, 138 S. Ct. at 1508. A represented defendant surrenders control to counsel over tactical decisions at trial while retaining the right to be the "master" of his own defense. See id.; Faretta, 422 U.S. at 820. Counsel can make decisions over matters of trial management, such as "the objections to make, the witnesses to call, and the arguments to advance." Gonzalez v. United States, 553 U.S. 242, 249 (2008). But the defendant has "the ultimate authority to make certain fundamental decisions regarding the case." Jones v. Barnes, 463 U.S. 745, 751 (1983). The latter category of decisions "are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*." McCoy, 138 S. Ct. at 1508. Those autonomous decisions that are reserved exclusively for the defendant include whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, take an appeal, and admit guilt of a charged crime. See id.; Jones, 463 U.S. at 751. As with deprivation claims, usurpation of a defendant's autonomy is a structural error, obviating the need to show prejudice. See McCoy, 138 S. Ct. at 1511.

Kellogg-Roe asserts all three types of Sixth Amendment claims. In Claim 1, he argues that the trial court violated his

right of autonomy to decide the objectives of his defense when
it overrode his demand that defense counsel do nothing at trial.
In Claim 2, he argues that he was completely deprived of counsel
when the trial court allowed him rather than his counsel to
control the decision whether to cross-examine the victim.  And
in Claim 4, he asserts that defense counsel rendered ineffective
assistance when they neither abided by his decision to refrain
from defending him nor cross-examined the victim.  The post-
conviction court applied the <u>Strickland</u> test to all three claims
on the ground that "the standard for ineffective counsel and for
being deprived of any counsel at all are . . . one in the same."
<u>See</u> Doc. No. 120-6 at 7.  The post-conviction court then denied
the claims because Kellogg-Roe proved neither deficient
performance by counsel nor any prejudice.  I review the court's
decision with respect to each claim sequentially.

   1.    Rejection of Kellogg-Roe's Decision to Silence Defense
         Counsel as Violation of His Autonomy (Claim 1)

    In his first claim, Kellogg-Roe alleges a violation of his
right to autonomously decide on the objectives of his defense,
which he claims was to present no defense whatsoever.  He
contends that I should review this claim de novo because the
post-conviction court used the wrong legal standard and thus did
not decide the claim on the merits.  The Warden maintains that
deference is owed to the post-conviction court's decision.  I

conclude that the claim was adjudicated on the merits, but that the adjudication is not entitled to deference because the legal standard the court used is contrary to clearly established Supreme Court precedent.

Under AEDPA, a matter is adjudicated on the merits if the decision was "delivered after the court . . . heard and *evaluated* the evidence and the parties' substantive arguments." Johnson v. Williams, 568 U.S. 289, 302 (2013) (quoting Black's Law Dictionary 1199 (9th ed. 2009)). In other words, there must be "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Yeboah-Sefah v. Ficco, 556 F.3d 53, 66 (1st Cir. 2009) (internal quotation marks omitted). Absent any contrary indication, it is presumed that a state court decision adjudicates a claim on the merits. Lyons v. Brady, 666 F.3d 51, 54 (1st Cir. 2012). "A state court does not fail to adjudicate a claim on the merits if it assesses the petitioner's claim but applies a legal standard other than the standard petitioner suggests." Jackson v. Marshall, 864 F.3d 1, 9 (1st Cir. 2017). Rather, whether the state court applied the correct legal standard is a question that the federal habeas court reviews through the lens of AEDPA deference. Id. In performing this task, I must "review[] the

specific reasons given by the state court and defer[] to those reasons if they are reasonable." Wilson, 138 S. Ct. at 1192.

Here, the post-conviction court plainly adjudicated Kellogg-Roe's claims on the merits. Although Kellogg-Roe styled Claim 1 as a denial of his right to counsel, he briefed the autonomy caselaw and argued that the trial court violated his right to control the objectives of his defense when it denied his request for his counsel to do nothing at trial. The post-conviction court characterized this claim as a deprivation claim and applied the Strickland test on the ground that "the standard for ineffective counsel and for being deprived of any counsel at all are . . . one in the same." See Doc. No. 120-6 at 6. The court's ruling was thus a decision on the merits.

The post-conviction court's reasoning, however, is contrary to clearly established Supreme Court precedent. In McCoy, the Supreme Court made clear that the Strickland standard does not apply where "a client's autonomy, not counsel's competence, is in issue." 138 S. Ct. 1510-11. Instead, a court must decide if the dispute concerned a tactical decision committed to counsel's judgment or a decision concerning the objectives of the defense reserved strictly for the defendant. See id. at 1508. If it is the latter, then usurping control from the defendant violates his right of autonomy and results in a structural error

warranting reversal irrespective of its prejudicial effect.  See id. at 1511.

Because the post-conviction court's reason for denying the autonomy claim was contrary to clearly established federal law, I review the claim de novo.  See Lafler v. Cooper, 566 U.S. 156, 173 (2012) (when "state court's adjudication was contrary to clearly established federal law," federal courts "can determine the principles necessary to grant relief").  When viewed in this way, the issue is whether a defendant's instruction to his counsel to refrain from challenging the prosecution's case is a decision concerning the objectives of the defense reserved for the defendant, or a trial strategy decision committed to counsel's judgment.  I conclude that it is the latter.

By pleading not guilty and opting to be tried, Kellogg-Roe availed himself of the presumption that he was innocent until proven guilty beyond a reasonable doubt.  Effectively, he chose to "rely[] upon the presumption of innocence as a principal defense." United States v. Yakobowicz, 427 F.3d 144, 150 (2d Cir. 2005).  In seeking to restrict defense counsel's activities, by contrast, Kellogg-Roe sought control over the management of that defense.  His directive to his counsel to do nothing is equivalent to a series of directives on matters of case strategy and tactics (i.e., "do not make an opening statement," "do not cross-examine witnesses," "do not raise

evidentiary objections."). But it is up to counsel to make such decisions:

> Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence."

McCoy, 138 S. Ct. at 1508 (quoting Gonzalez, 553 U.S. at 248). By choosing to be represented by counsel, Kellogg-Roe surrendered control to his counsel to make "'[n]umerous choices affecting conduct of the trial' [that] do not require client consent, including 'the objections to make, the witnesses to call, and the arguments to advance.'" Id. at 1509 (quoting Gonzalez, 553 U.S. at 249). Directing counsel to stand mute is plainly inconsistent with the array of decisions committed to counsel's independent professional judgment.

A decision to silence defense counsel is distinguishable from the decisions that the Supreme Court has recognized as belonging to the defendant alone. It is the defendant's sole prerogative to decide whether to plead guilty, waive a jury trial, testify, forego an appeal, and admit guilt of a charged crime. See McCoy, 138 S. Ct. at 1508; Jones, 463 U.S. at 751. Such decisions are reserved for the defendant because they "are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*." McCoy, 138 S. Ct. at 1508.

The Supreme Court's application of this principle in McCoy
is instructive.  McCoy was charged with the capital murder of
his estranged wife's mother, stepfather, and son.  Although
McCoy insisted that he had not killed anyone, and he testified
as much at trial, his attorney conceded over McCoy's objection
in his opening and closing statements during the guilt phase of
the trial, and again during the trial's penalty phase, that
McCoy had committed the murders.  Id. at 1506-07.  The Supreme
Court held that the choice between admitting guilt during the
guilt phase and maintaining innocence despite overwhelming
evidence of guilt concerned the objectives of the defense and
thus belonged to the defendant.  See id. at 1508.  Although
counsel may reasonably conclude that a concession of guilt is
the defendant's best chance at avoiding the death penalty, the
Supreme Court explained that the defendant "may not share that
objective."  Id.  He may instead "wish to avoid, above all else,
the opprobrium that comes with admitting he killed family
members," or "he may hold life in prison not worth living and
prefer to risk death for any hope, however small, of
exoneration."  Id.  The choice between asserting innocence and
conceding guilt thus is not a tactical one for counsel to make
but a decision that carries weighty personal consequences for
the defendant.  See id.  The Court emphasized, however, that
preserving this choice for the defendant "should not displace

counsel's, or the court's, respective trial management roles."
Id. at 1509.  Specifically, counsel is not required to employ
the assertion of innocence as a principal defense and can
instead focus on elements of the offense that, in counsel's
professional judgment, have a better chance of success.  See id.

By contrast, giving the defendant the right to bar his
counsel from defending him by insisting on a silent defense
would eviscerate the distinction the Supreme Court has drawn
between the objectives of the defense and counsel's tactical
choices.  See id. at 1508.  Effectively, permitting the
defendant to invoke a silent defense would take away from
counsel the ability to make strategic decisions altogether.
Furthermore, unlike a concession of guilt, having counsel
present some defense on the defendant's behalf instead of
standing mute does not "carr[y] grave personal consequences that
go beyond the sphere of trial tactics."  See United States v.
Read, 918 F.3d 712, 720 (9th Cir. 2019) (extending McCoy to
right to refuse insanity defense).  The decision to silence
defense counsel falls squarely in the domain of case strategy
and thus does not implicate the right of autonomy secured by the
Sixth Amendment.

Because Kellogg-Roe's autonomy claim necessarily fails, at
most, he can assert an ineffectiveness claims arising from the
denial of his request to silence his counsel.  See United States

v. Khan, 769 F. App'x 620, 624 (10th Cir. 2019) (where defendant failed to show that alleged error was violation of autonomy under McCoy, considering that error under Strickland).  Although the post-conviction court applied the Strickland test based on the clearly incorrect premise that the test applied to an autonomy claim, it was ultimately correct in analyzing Claim 1 as an ineffectiveness claim.  Further, the court's finding that there was neither deficient performance by counsel nor resulting prejudice is a reasonable application of Strickland.  See Yeboah-Sefah, 556 F.3d at 70-71 (ineffectiveness claims evaluated under § 2254(d)(1)'s "unreasonable application" clause).

As to deficient performance, it is bizarre to suggest that having counsel function as counsel and make independent judgments about challenges to the prosecution's case falls below an objective standard of reasonableness.  In fact, the Supreme Court has recognized that there is a constructive denial of counsel altogether when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Cronic, 466 U.S. at 659.  This total silence is precisely what Kellogg-Roe wanted, and what the trial court prevented from occurring by allocating control over trial management to defense counsel.

In addition, the post-conviction court aptly found that the overwhelming evidence of Kellogg-Roe's guilt precluded a finding

of prejudice.  Even if defense counsel had stood silent throughout trial, the court reasonably concluded that Kellogg-Roe's many confessions to the charged conduct had left no reasonable probability that the jury would have acquitted him.

Because Claim 1 fails whether it is construed as an autonomy claim or an ineffectiveness claim, the Warden is entitled to summary judgment.

2.   Ceding Control to Kellogg-Roe over the Decision Whether to Cross-Examine the Victim as Complete Deprivation of Counsel (Claim 2)

Whereas in Claim 1 Kellogg-Roe argued that he was not given sufficient control over his defense, in Claim 2 he contends that he was allowed too much control.  He alleges that the trial court completely deprived him of counsel by permitting him to override his counsel's decision to cross-examine the victim.  As with Claim 1, the post-conviction court based its decision to deny the claim on the clearly incorrect premise that deprivation claims are subject to the Strickland standard.  As discussed above, Cronic plainly holds that prejudice is presumed when there is actual or constructive deprivation of counsel altogether.  See 466 U.S. at 658-59.  Because "the specific reasons given by the state court" for denying the claim are contrary to clearly established Supreme Court precedent, see Wilson, 138 S. Ct. at 1192, I review the claim de novo.  See Lafler, 566 U.S. at 173.

The trial court did not completely deprive Kellogg-Roe of counsel when it honored his request to forego cross-examination of the victim. The only potential construction for this claim under the deprivation rubric is the first _Cronic_ category, which pertains to claims that counsel was "prevented from assisting the accused during a critical stage of the proceeding." 466 U.S. at 659 & n.25. Cross-examination of a prosecution witness is indeed a critical stage during which a defendant is entitled to the assistance of counsel. See _Bell_, 535 U.S. at 695-96. But counsel was prevented from assisting Kellogg-Roe in this instance at Kellogg-Roe's own request. He cites no authority, and I have found none, to suggest that acquiescing to a defendant's decision in such circumstances can form the basis for a complete deprivation claim.

It is true, as Kellogg-Roe points out, that whether to cross-examine a witness is among the decisions that counsel is free to make without the defendant's consent. See _McCoy_, 138 S. Ct. at 1508; _Gonzalez_, 553 U.S. at 249. But it does not follow that ceding control to a fully informed defendant[5] over a matter of trial strategy is sufficient to maintain a complete deprivation claim. Such allegations have been litigated as

_____

[5] Kellogg-Roe does not challenge the post-conviction court's finding that he was fully informed as to why he should have permitted counsel to cross-examine the victim.

ineffectiveness claims, which further supports the notion that they do not fit into the narrow deprivation category.  See, e.g., United States v. Masat, 896 F.2d 88, 91-93 (5th Cir. 1990); United States v. Weaver, 882 F.2d 1128, 1140 (7th Cir. 1989); Mulligan v. Kemp, 771 F.2d 1436, 1441-42 (11th Cir. 1985).

As with Claim 1, the post-conviction court evaluated the merits of Claim 2 using the ineffectiveness standard, albeit based on the incorrect assumption that all deprivation claims are subject to Strickland.  The court's conclusion that the evidence failed to establish either deficient performance by counsel or prejudicial effect is a reasonable application of the Strickland test.

Courts have declined to characterize counsel's performance as deficient where a defendant makes a fully informed decision on trial strategy and counsel complies with the defendant's instruction.  See, e.g., Masat, 896 F.2d at 91-93; Weaver, 882 F.2d at 1140; Mulligan, 771 F.2d at 1441-42.  These rulings are consistent with the guidance from Strickland that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  466 U.S. at 691.  "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."  Id.

As for prejudice, I defer to the post-conviction court's reasonable finding that Kellogg-Roe failed to establish that there would have been a reasonable doubt concerning his guilt if the victim had been cross-examined. Even if defense counsel had cross-examined the victim and challenged her credibility, copious evidence against Kellogg-Roe did not depend on her testimony, but upon his own repeated and unchallenged confessions. The finding of no prejudice was thus based on the court's reasonable application of the appropriate legal test.

In sum, Kellogg-Roe has failed to establish a viable claim arising from the trial court's decision to honor his request for his counsel to forego cross-examining the victim. I therefore grant summary judgment to the Warden on Claim 2.

3.  <u>Trial Counsel's Failure to Either Abide by the Silent Defense or Cross-Examine the Victim as Ineffective Assistance (Claim 4)</u>

In a separate claim, Kellogg-Roe alleges that his counsel rendered ineffective assistance when they neither honored his request to do nothing at trial, nor vigorously defended him by cross-examining the victim. It is undisputed that this is a straightforward ineffectiveness claim subject to the <u>Strickland</u> standard. Kellogg-Roe must therefore show that the post-conviction court "applied <u>Strickland</u> to the fact of his case in an objectively unreasonable manner." <u>Bell</u>, 535 U.S. at 698-99. This he cannot do.

To the extent Kellogg-Roe argues that his counsel's actions, either in combination or independently, resulted in deficient performance that prejudiced his defense, the claim must fail.  The post-conviction court, having already evaluated counsel's actions under <u>Strickland</u> for Claims 1 and 2, correctly observed that this claim presents "merely a rehashing of prior arguments, and is without merit."  <u>See</u> Doc. No. 120-6 at 10. For the reasons discussed above, the post-conviction court's adjudication is owed deference, and therefore, the Warden is entitled to summary judgment on Claim 4 as well.

**B.**     **<u>Denial of the Right to Confrontation by Precluding Counsel</u>**
           **<u>from Cross-Examining the Victim (Claim 3)</u>**

Kellogg-Roe contends that his Sixth Amendment right to confront his accuser was violated when the trial court acceded to his directive that his counsel forego cross-examining the victim.  His own decision did not amount to an effective waiver, he claims, because (1) a represented defendant cannot waive the right to cross-examination, only his counsel can, and (2) even if a defendant can personally waive the right, his waiver was not knowing because the trial court failed to inform him that he was waiving a constitutional right.  The post-conviction court rejected both arguments on the merits, concluding that Kellogg-Roe could personally waive his right to cross-examination and that he did so knowingly, intelligently, and voluntarily.

Neither holding is contrary to, or an unreasonable application of, clearly established federal law.

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." United States v. Mezzanatto, 513 U.S. 196, 201 (1995). It is well-established that the right secured by the Confrontation Clause to confront and cross-examine adverse witnesses is among those waivable rights. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 313 n.3 (2009); Boykin v. Alabama, 395 U.S. 238, 243 (1969); Brookhart v. Janis, 384 U.S. 1, 4 (1966); Diaz v. United States, 223 U.S. 442, 452-53 (1912).

Waiver of the right to cross-examination can be accomplished either by the defendant personally or by his counsel. The defendant may personally waive his confrontation rights by pleading guilty, Boykin, 395 U.S. at 243; by voluntary absence at trial, Taylor v. United States, 414 U.S. 17, 18-19 (1973); and by his own misconduct or disruptive actions, Illinois v. Allen, 397 U.S. 337, 342-43 (1970). Counsel may also effect a waiver by stipulating, or failing to object, to the admission of testimonial evidence or by declining to cross-examine a witness. See Melendez-Diaz, 557 U.S. at 313 n.3 ("[t]he right to confrontation may, of course, be waived, including by failure to object to the offending evidence"); Gonzalez, 553 U.S. at 249-50 ("tactical decisions" through which

counsel may effect waiver include "the objections to make, the witnesses to call, and the arguments to advance"); Diaz, 223 U.S. at 444, 452–53 (holding that defendant waived Confrontation Clause objection to admission of prior testimony because his own counsel introduced it); see also McCoy, 138 S. Ct. at 1516 (Alito, J., dissenting) (noting that whether to cross-examine witnesses is "[a]mong the decisions that counsel is free to make unilaterally").[6]

Although the defendant cedes control to counsel over the decision whether to cross-examine a witness by virtue of seeking counsel's assistance, it does not follow that the defendant cannot personally waive his right to cross-examination. Certainly, Kellogg-Roe has not identified any Supreme Court holding to this effect, and I have found none. In fact, the Supreme Court has recognized in dictum that the decision to waive the right to confrontation by declining to cross-examine witnesses is one the defendant can make "in consultation with counsel." See Godinez v. Moran, 509 U.S. 389, 398 (1993). The

---

[6]    Every circuit court to decide the question of waiver by counsel has come to the same conclusion. See United States v. Robinson, 617 F.3d 984, 989–90 (8th Cir. 2010); United States v. Cooper, 243 F.3d 411, 418 (7th Cir. 2001); United States v. Plitman, 194 F.3d 59, 64 (2d Cir. 1999); United States v. Reveles, 190 F.3d 678, 683 (5th Cir. 1999); Hawkins v. Hannigan, 185 F.3d 1146, 1155–56 (10th Cir. 1999); Wilson v. Gray, 345 F.2d 282, 286–88 (9th Cir. 1965); Cruzado v. Puerto Rico, 210 F.2d 789, 790–91 (1st Cir. 1954).

right, after all, belongs to the defendant, not his counsel.
See Faretta, 422 U.S. at 819 ("It is the accused, not counsel,
who must be . . . confronted with the witnesses against him[.]")
(internal quotation marks omitted).  Simply put, the fact that
waiver by counsel is permitted does not mean that waiver by the
defendant is forbidden.  The two are not mutually exclusive.

As Kellogg-Roe cites no contrary authority, I cannot say
that the post-conviction court's determination that he could
personally waive his right to cross-examination applied clearly
established federal law in an objectively unreasonable manner.
The court's decision is, therefore, entitled to deference.

Likewise, the post-conviction court's determination that
Kellogg-Roe had made a knowing, intelligent, and voluntary
waiver of his right to cross-examine the victim did not involve
"an unreasonable application" of clearly established federal
law.  See 28 U.S.C. § 2254(d)(1); see also Yeboah-Sefah, 556
F.3d at 68 (explaining that waiver presents a "mixed question of
law and fact" reviewed under § 2254(d)(1)'s "unreasonable
application" clause).  The court supportably found that the
trial judge had sufficiently explained the detriments of
foregoing the cross-examination, sought repeated affirmations
that Kellogg-Roe had carefully considered and understood the
ramifications of his decision, and accepted the waiver after
Kellogg-Roe coherently explained his rationale.  Further, the

trial court's colloquy was conducted after Kellogg-Roe was found competent to stand trial, and thus he was presumably capable of making an intelligent decision to waive his rights.  See Godinez, 509 U.S. at 399-400; Yeboah-Sefah, 556 F.3d at 69.

Kellogg-Roe protests that he was not specifically informed that he was waiving a constitutional right.  But the Supreme Court has neither defined fact-specific constitutional minima for a valid waiver of the right to cross-examination, nor found a waiver insufficient in a situation analogous to Kellogg-Roe's, nor required a set colloquy before such a waiver can be accepted.  Cf. Cotto v. Herbert, 331 F.3d 217, 234 (2d Cir. 2003) ("[T]here is no Supreme Court caselaw definitively establishing the circumstances sufficient, or the standard of proof applicable, in analyzing waiver cases under the Confrontation Clause.").  Accordingly, the post-conviction court's determination that the trial court's colloquy with Kellogg-Roe was sufficient to establish a valid waiver is entitled to deference.

As the post-conviction court denied Claim 3 on grounds that pass muster under AEDPA, I grant summary judgment to the Warden on this claim.

## C.  Ineffective Assistance of Counsel During Plea Negotiations (Claim 5)

Kellogg-Roe further alleges that his trial counsel rendered constitutionally deficient performance by failing to communicate to him that the prosecutor had offered a plea agreement calling for five-year sentence on the eve of trial.  Following an evidentiary hearing, the post-conviction court made a factual finding that defense counsel had, in fact, communicated the plea offer to Kellogg-Roe and that he had rejected it.  The court noted that one of Kellogg-Roe's counsel had testified to this effect, and that Kellogg-Roe had admitted to having "holes" in his recollection of the events.  See Doc. No. 1 at 22.  The court thus denied the claim because counsel did not render deficient performance.

Kellogg-Roe has not shown that the state court's factual finding "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  He merely points to the fact that there was no notation concerning this plea offer in either his counsel's, or the prosecutor's, files.  But the post-conviction court reasonably found this omission consistent with defense counsel's testimony that the offer had no traction, as Kellogg-Roe rejected it out of hand and insisted on going to

trial.  See Doc. No. 1 at 22.  Thus, this habeas claim, too, is
meritless.

**D.**   **Ineffective Assistance of Appellate Counsel (Claim 6)**

Finally, Kellogg-Roe contends that his appellate counsel
was constitutionally deficient because counsel presented
insufficiently developed arguments in his direct appeal to the
NHSC.  The post-conviction court denied the claim on the merits,
finding neither deficient performance nor prejudice.  The
court's adjudication is not an unreasonable application of the
Strickland standard.

First, the post-conviction court's conclusion that
appellate counsel was not deficient does not qualify as an
unreasonable application of the ineffectiveness standard.
Reasonable jurists can often disagree about whether an appellate
attorney's legal arguments are so poorly supported as to
constitute a constitutionally deficient performance.  See, e.g.,
Kelly v. Lazaroff, 846 F.3d 819, 832 (6th Cir. 2017) (holding
that appellate counsel's "poor performance" was not deficient
under the "doubly deferential" standard established by AEDPA in
combination with Strickland); Gulliver v. Dalsheim, 739 F.2d
104, 108 (2d Cir. 1984) (although argument in appellate brief
was "not as fully or as well presented as it might have been,"
holding that it did not sink "to that level of incompetent
appellate advocacy that constitutes a violation of the Sixth

34

Amendment"); Ingram v. State, 508 N.E.2d 805, 808 (Ind. 1987) (holding that appellate counsel did not render ineffective assistance by drafting appellate brief "in a cursory manner" where brief "sufficiently enabled court to reach the issues").

Second, the post-conviction court's determination that no prejudice resulted from appellate counsel's performance is likewise entitled to deference. A defendant must show that, absent appellate counsel's deficient performance, there was a reasonable probability that his appeal would have been successful. See Smith v. Robbins, 528 U.S. 259, 285 (2000). On de novo review of Claims 1 and 2, I rejected on the merits the same arguments that Kellogg-Roe claims appellate counsel insufficiently developed on direct appeal. It was reasonable, therefore, for the post-conviction court to find that the appeal would have been unsuccessful even if the arguments had been better developed.

Because the post-conviction court's denial of Claim 6 is owed deference under AEDPA, the Warden is entitled to summary judgment on this claim as well.

# IV.  **CONCLUSION**

For the foregoing reasons, I grant the Warden's motion for summary judgment (Doc. No. 123) on all claims.  I also decline to issue a certificate of appealability, because Kellogg-Roe has neither (1) shown that reasonable jurists could debate whether his petition should have been resolved in a different manner; nor (2) shown that the issues presented were adequate to deserve encouragement to proceed further; nor (3) otherwise made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 25, 2020

cc:  Elizabeth C. Woodcock, Esq.
     Behzad Mirhashem, Esq.